IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD L. PATTERSON, JR. | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 15-5405 |
| DELAWARE RIVER PORT AUTHORITY | : |
| OF PENNSYLVANIA AND NEW JERSEY, | : |
| et al | : |

## MEMORANDUM

**KEARNEY, J.**  May 9, 2016

An employee deciding to walk away from his job and then later claim race discrimination and interference with his rights under the Family and Medical Leave Act ("FMLA") must adduce competent evidence of an adverse employment action for his race-based discrimination claim and show FMLA eligibility under Congress' mandate of 1,250 hours worked in the twelve months before the requested leave. Employer policies applying to all custodians regardless of race when they do not seriously affect job status are generally not adverse employment actions due to race. Congress, fulfilling its constitutional function as elected representatives, requires employees seeking FMLA leave to have worked 1,250 hours in the preceding twelve months. In our Article III role, we cannot find employer policies not seriously affecting job status or pay is an adverse action and we cannot change Congress' FMLA eligibility mandate to some number less than 1,250 hours based on an employee's unsupported speculation of an employer's possible reporting error. When the former employee cannot show an adverse employment action necessary for a race discrimination in employment claim or genuine issues of material fact based on competent evidence as to his FMLA eligibility, we grant the former employer's motion for summary judgment as there are no genuine issues of material fact requiring the jury's deliberation.

## I. Undisputed facts

Port Authority Transit Corporation ("PATCO") employed Donald Patterson as a custodian since May 2005.[1] PATCO formally terminated his employment on September 28, 2012 after a pre-disciplinary hearing for excessive absences which Patterson elected not to attend.[2] After electing not to attend his pre-disciplinary hearing, Patterson sought counsel and claimed PATCO terminated him because of his race.

Patterson claims three instances of race discrimination: PATCO provided its night shift custodians, regardless of race, only two bottles of water per shift while giving other units more water, although all employees could bring all the water they wanted; PATCO provided cloth gloves, rather than rubber, to night shift custodians; and, PATCO required night shift custodians to provide reasons for personal days, while not requiring other employees to provide reasons. Patterson concedes these policies did not inflict economic harm on him but seriously altered his employment conditions due to his race. Caucasians worked on the night shift as well.

Patterson also claims PATCO interfered with his FMLA rights by terminating him after he failed to appear at the disciplinary hearing called to address his absences.[3] In Summer 2012, PATCO required Patterson, and all night shift custodians working from remote locations, to "call-in" upon arriving at their location to begin their hourly reporting. PATCO would contemporaneously record the time of the call to calculate hours. If no one at PATCO answered the call, PATCO directed the custodian to leave a voice mail to accurately record hours worked for payroll. PATCO's paystubs confirm the number or reported hours. To ensure timely reconciliation, PATCO directed employees to challenge inaccurate hourly reporting. While Patterson claims he broadly challenged his pay, he never specifically mentioned any pay stub

2

inaccurately reflecting the number of hours worked. Patterson claimed to have separately logged his hours in a personal notebook but inexplicably discarded this material evidence of his contemporaneous record of hours worked.

PATCO maintains a written FMLA Policy.[4] Consistent with federal law, PATCO requires employees seeking FMLA leave to have worked at least 1,250 hours in the preceding twelve months.[5] PATCO requires its employees seeking FMLA leave notify Human Resources within three (3) calendar days of when the employee knows he will need leave, and submit a completed Certification of Health Care Provider form to Human Resources.[6] PATCO does not permit employees to waive the FMLA statutory requirements.[7]

PATCO also maintains and implements a specific policy for reporting work absence.[8] There is no dispute Patterson called out and/or did not show up for work on multiple dates throughout his tenure at PATCO.[9] After extended absences, PATCO advised Patterson his absences *may* qualify for FMLA leave and further stated if the absences were due to a serious health condition, he needed to (1) complete and submit an FMLA application together with a (2) Certification of Health Care Provider form to be awarded FMLA leave time.[10]

On April 24, 2012, PATCO sent Patterson a letter scheduling a disciplinary hearing to discuss numerous time and attendance infractions from November 2010 to March 2012, where Patterson failed to report to work on time, failed to show up for work, and/or failed to follow proper procedure for requesting an emergency personal day.[11] Patterson attended the hearing and did not refute his infractions or produce documentation regarding his absences.[12] PATCO suspended Patterson for four days without pay in June 2012 and warned him future incidents would subject him to further discipline, including possible termination.[13] Patterson did not

3

appeal this disciplinary action against him.[14]

Patterson does not dispute he failed to show for work, and failed to call in to report absences in violation of PATCO's attendance policy on August 3, 7, 8, 9, 10, 13, 14, 15, 16, 17 and 31, 2012.[15] He also did not report on August 14-17, 2012.[16] On August 14, 2012, Patterson faxed a letter from a registered nurse practitioner to PATCO representing only "Patterson is a patient under our care and is being treated for an acute illness. He needs to refrain from work until his symptoms resolve. He has been out of work since August 3 and will have to continue to convalese [sic] for an additional week. He may return August 20th if his symptoms have resolved."[17]

On the same day, PATCO mailed Patterson a letter notifying him of work absence since August 3, 2012 and, if he had a serious health condition rendering him incapable of performing the functions of his job, he may qualify for FMLA leave if he worked 1,250 hours in the last twelve months.[18] To obtain leave, PATCO required, as it had every earlier time Patterson sought FMLA leave, for him to complete the specific certification form by month end.[19] By August 24, 2012, PATCO confirmed Patterson worked 1239.02 hours between August 3, 2011 and August 3, 2012.[20]

Patterson disputes generally PATCO's call-in attendance reporting system for custodians and contends its records of his work hours are likely not accurate, but he offers no competent evidence contradicting PATCO's record of his total hours worked.[21]

In September 2012, PATCO scheduled a pre-disciplinary hearing to address Patterson's chronic absenteeism, but he chose not to attend.[22] On September 26, 2012, PATCO terminated Patterson for excessive absenteeism, effective September 28, 2012.[23] Patterson claims he

4

voluntarily left PATCO in September 2012, before he was formally terminated.[24]

## II. Analysis

Patterson contends his absences in August and September 2012 should have been authorized FMLA leave. He admits he voluntarily left PATCO without being terminated. He claims PATCO is liable for race discrimination and unlawful interference with FMLA rights based on his unsupported view of working at least 1,250 hours.

PATCO moves for summary judgment arguing there are no genuine issues of material fact from which a jury could: find the adverse action necessary for race discrimination; or, find Patterson is eligible for FMLA leave because he did not work the minimum required 1,250 hours in the twelve month period preceding the first day of his requested leave, August 3, 2012. We grant PATCO's motion as there are no genuine issues of material fact.[25]

### A. Patterson cannot show adverse action required for his race discrimination in employment claim.

Patterson claims race discrimination in employment under 42 U.S.C. §§1981 and §1983. The framework for a §1981 claim based on employment discrimination is well settled: (1) a plaintiff must establish a *prima facie* case of racial discrimination; (2) the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection"; and (3) plaintiff must be afforded a fair opportunity to show the employer's stated reason for rejection was in fact pretext.[26]

To establish a *prima facie* case of race discrimination, Patterson must show by a preponderance of the evidence, (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered adverse employment action; and (4) the adverse employment action gives rise to an inference of discrimination.[27] The parties do not dispute Patterson is African-

American and was qualified for the custodian position. Our focus is on whether Patterson can show adverse employment action and evidence giving rise to an inference of discrimination.

Patterson admits he was not terminated, but voluntarily left his position at PATCO.[28] Patterson's race discrimination claim is based not on termination but on alleged company-wide disparate treatment of custodians, who were predominantly, but not exclusively, African-American. Patterson cites three so-called PATCO policies toward custodians as alleged race discrimination: (1) night shift custodians were only permitted two water bottles per shift; (2) custodians were provided cloth gloves instead of rubber gloves; and (3) custodians were required to provide reasons for taking personal days.

Patterson's first two challenges describe rules imposed by his night shift supervisor which other managers did not observe. Patterson admits PATCO did not single him out; these limitations applied to all custodians, without regard to race.[29] Patterson complained about the water bottle limitation to PATCO's night shift manager who told him to "take as much water as you want."[30] As Patterson readily admitted:

> [Night shift manager Chuck Linen] said if you ever have a problem with water again, just let me know. I find it hard to believe that he would try to – in this weather he would try to give you just two bottles of water. . . . . [Chuck] ripped the case of water from Dave [Callinan]. He said, Don, take as much water as you want. How are you going to just give them two bottles of water? . . .[31]

Patterson admits there is no evidence suggesting race was the reason he was limited to two bottles of water.[32]

Patterson contends he complained "to anybody that would listen" about his supervisor Dave Callinan issuing only cloth gloves, rather than rubber gloves, to complete custodial work. Patterson does not dispute Callinan's policy applied to all custodians, not just him, and after he

6

complained, PATCO issued rubber gloves to all custodians for their work.[33] Patterson also does not dispute PATCO did not impose a water bottle or rubber glove limitation when he switched to the day shift in 2011.[34] Rather, he contends "the custodial staff in general, which is predominantly Black, has been subjected to disparate treatment."[35] Patterson provides no factual evidence of any kind to support this claim.[36]

To allow a jury to consider an "adverse employment action" giving rise to an employment discrimination claim, Plaintiff must show the action caused a material change in the terms and conditions of his employment.[37] Patterson concedes he complained to supervisors about the two water bottle and rubber glove policies and PATCO responded to these complaints permitting custodians to "take as much water as they wished" and "provided rubber gloves." We do not find these rules constitute adverse employment actions so adverse as to alter the terms and conditions of Patterson's employment.[38] Patterson has not made out a *prima facie* case of a § 1981 violation.[39]

Patterson also contends PATCO required only custodians to complete paperwork to take a personal day. Although Patterson testified Callinan imposed this rule[40], he offers no competent evidence to support a claim PATCO enacted this rule as racially motivated, merely his own testimony "people speculated racism or racial discrimination."[41] This speculation is insufficient grounds to support a race discrimination claim.

### B. Patterson is not eligible for FMLA leave.

The FMLA grants an eligible employee the right to twelve work-weeks of leave over any twelve-month period because of, among other things, "a serious health condition that makes the employee unable to perform the functions" of the employee's position.[42] The FMLA prohibits

7

Case 2:15-cv-05405-MAK   Document 47   Filed 05/09/16   Page 8 of 12

employers from interfering with an employee's exercise of FMLA rights and provides employees with a private right of action to enforce these rights.[43]

To prevail on his FMLA interference claim,[44] Patterson must show "he was entitled to benefits under the FMLA and [] he was denied them."[45] "The FMLA does not provide a private right of action for any employee, but rather only for eligible employees."[46] "Eligible employee" means one who has been employed (1) for at least 12 months by the employer from whom leave is requested; and (2) for at least 1,250 hours of service with such employer during the previous 12-month period.[47] These are strict requirements.[48]

PATCO's records show Patterson did not qualify as a FMLA "eligible employee" on August 3, 2012 because he had not worked 1250 hours in the preceding twelve months. Although Patterson questions these records as "likely" not accurate[49], he offers no evidence refuting PATCO's records, and concedes it was in each employee's interest to ensure accuracy of employee time records.[50] He allegedly maintained a personal notebook of time entries, but discarded this notebook. To avoid summary judgment, Patterson must show specific facts of a genuine issue for trial; he must not rest upon mere allegations.[51] Patterson may not create a factual dispute regarding PATCO's recordkeeping without offering some competent evidence to support his allegation of possibly inaccurate recordkeeping.[52] He has not.

Because Patterson is not an eligible employee, we need not reach the issue whether his claim is barred by FMLA's two-year statute of limitations for non-willful violations of the Act.

## III. Conclusion

Patterson fails to demonstrate minimal evidentiary support for his FMLA interference or unlawful race discrimination claims. PATCO polices affecting bottles of water, rubber gloves and reasons for personal days, applying to all custodians regardless of race, are not adverse employment actions necessary to show race discrimination in employment. PATCO produced unimpeached evidence of Patterson working only 1239.02 hours in the twelve (12) months before August 3, 2012 and Patterson fails to offer or point to any contradictory evidence. To the contrary, to the extent he once maintained a notebook or log or his hours, he discarded this evidence. Patterson is not an eligible employee entitled to FMLA leave.

---

[1] SOF ¶2. The Court's policies require Defendants file a Statement of Undisputed Material Facts to accompany their Motion for Summary Judgment, and Plaintiffs must respond. Plaintiff's SOF (at ECF Doc. No. 28-2) and Defendants' response (at ECF Doc No. 33) shall be collectively referred to as "SOF." The parties must also submit a Joint Appendix ("J.A.") containing facts supporting their position.

[2] SOF ¶93, 96

[3] Plaintiff's counsel made these largely undisputed factual representations during oral argument and we consider them in reviewing PATCO's Motion for Summary Judgment although Plaintiff's SOF and Memorandum opposing summary judgment do not specifically cite them. These statements by Plaintiff's counsel are supported by Patterson's testimony in the parties' Joint Appendix.

[4] SOF ¶ 10

---

[5] J.A. at 141-142A

[6] J.A. 61A

[7] SOF ¶12

[8] SOF ¶¶62-63

[9] SOF ¶¶64-73

[10] *See e.g.* SOF ¶¶ 14, 16, 18, 19, 21, 24, 25, 28, 30, 24, 46

[11] SOF ¶74

[12] SOF ¶77

[13] *Id.*

[14] SOF ¶78.

[15] SOF ¶79, 81-85, 87

[16] SOF ¶85

[17] J.A. 199A-200A

[18] J.A. 202A

[19] *Id.*

[20] SOF ¶86, J.A. 204A-206A

[21] *Id.* When questioned about inaccurate reporting hours, Patterson claimed PATCO only misreported one day, where PATCO records showed Patterson came in late but Patterson claims he did not report to work at all. SOF ¶101; J.A. at 231A

[22] SOF ¶¶91-92

[23] SOF ¶96

[24] SOF ¶94

[25] Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary

judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for [Plaintiff]." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). The non-movant must specifically identify evidence of record, as opposed to general averments, which supports his claim and upon which a reasonable jury could base a verdict in his favor. *Celetex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[26] *Merke v. Lockheed Martin*, No. 15-1993, 2016 WL 1105401, *3 (3d Cir. Mar. 22, 2016)

[27] *Id.*

[28] J.A. 247A ("Like I said, I walked off the job and they had to fire me. I understand that. I have that presence of mind.")

[29] J.A. 223A

[30] J.A. 222A-223A

[31] J.A. 222A

[32] J.A. 223A

[33] J.A. 223A

[34] SOF ¶120; J.A. 224A

[35] ECF Doc. No. 32-2, p. 10.

[36] Patterson cites to testimony by PATCO's manager Ron Binder, answering questions about his perceived race of certain custodial employees. Patterson proffers this as "evidence" of "undisputed racial composition of defendants' custodial corps". We do not agree the racial composition of PATCO's custodians is determined by this testimony.

[37] *Deans v. Kennedy House, Inc.*, 587 Fed. App'x 731, 734 (3d Cir. 2014).

[38] *See e.g. Tucker v. Merck & Co.*, 131 F. App'x 852, 856 (3d Cir. 2005)

[39] *Id.* Patterson also cannot identify any similarly situated employees treated differently in the terms and conditions of their employment. To show disparate treatment, Patterson must demonstrate other similarly situated employees were treated more favorably. By "similarly situated," Patterson must show "alike in all relevant aspects." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir.

2008)). Patterson's contention he brought suit on behalf of the custodial staff in general which is predominantly Black and as a whole they have been subjected to disparate treatment, also lacks evidentiary support. ECF Doc. No. 32-2, p. 10.

[40] J.A. 224A.

[41] *Id.*

[42] *Davis v. Temple Univ. Hosp. Inc.*, No. 14-5981, 2015 WL 7180505, *3 (E.D. Pa. 2015).

[43] *Id.*

[44] Patterson concedes he has no claim for FMLA retaliation, and we analyze only the propriety of Plaintiff's FMLA interference claim.

[45] *Sinacole v. iGate Capital*, 287 F. App'x 993, 996 (3d Cir. 2008) (citing *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)).

[46] *Id.*, (citing 29 U.S.C. §2611(1)).

[47] 29 U.S.C.A. § 2611.

[48] *See e.g. Jordan v. Southeastern Pennsylvania Transit Authority*, No. 10-3470, 2012 WL 912723 (E.D. Pa. 2012); *Corcino v. Banco Popular de Puerto Rico*, 200 F.Supp.2d 507 (D.V.I. 2002).

[49] SOF ¶19 (Patterson citing his own Complaint and Answers to Interrogatories)

[50] SOF ¶¶226A, 234A; Patterson cites no facts which actually support this claim. ECF Doc. No 32-2, p. 12. Other than Patterson's speculation, there is also no factual evidence supporting Patterson's allegations and theory of problems with PATCO's recordkeeping.

[51] Fed.R.Civ.P. 56(e).

[52] *Clark v. Allegheny Univ. Hosp.*, No. 97-6113, 1998 WL 94803 (E.D. Pa. March 4, 1998).